Approved: _____
          Maggie Lynaugh
          Assistant United States Attorney

Before:   THE HONORABLE GABRIEL W. GORENSTEIN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                  :
UNITED STATES OF AMERICA                          :
                                                  :
       - v. -                                     :
                                                  :
SAMUEL HALL,                                      :
                                                  :
                                                  :
                          Defendant.              :
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# 23 MAG 1840

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 922(a)(1)(A),
924(a)(1)(D), and 2

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

       VALDRIN NIKQI, being duly sworn, deposes and says that he is a Detective with the New York City Police Department, and charges as follows:

## COUNT ONE
### (Firearms Trafficking)

       1.      From at least in or about October 2021 up to and including March 2022, in the Southern District of New York and elsewhere, SAMUEL HALL, the defendant, not being a licensed importer, licensed manufacturer, or licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, willfully and knowingly engaged in the business of importing, manufacturing, and dealing in firearms, to wit, HALL illegally sold five firearms to an undercover officer in the Bronx, New York.

       (Title 18, United States Code, Sections 922(a)(1)(A), 924(a)(1)(D), and 2.)

       The bases for my knowledge and the foregoing charges are, in part, as follows:

       2.      I am a Detective with the New York City Police Department ("NYPD"), currently assigned to the Firearms Investigation Unit.  This affidavit is based upon my conversations with law enforcement personnel, my examination of reports and records, and my participation in this investigation.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions,

statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Case

3.      Based on my training and experience, I know the following:

a.   Pursuant to the Gun Control Act, all firearms manufactured or imported into the United States since October 22, 1968 must bear an identifying serial number.

b.   One increasingly common way in which individuals who wish to possess untraceable firearms that do not bear serial numbers evade this requirement is through the use of privately made firearms, which are colloquially known as "ghost guns."

c.   Individuals can purchase kits containing the tools and component parts necessary to assemble such firearms.  For example, an individual can purchase an "80 percent pistol" from a kit manufacturer.  An "80 percent pistol" is an unfinished firearm advertised as being 80% complete, but that can be easily finished and assembled into a fully functional firearm.

4.      Based on my review of law enforcement reports and records, as well as conversations I have had with an undercover NYPD officer, I know that on three separate occasions between October 2021 and March 2022, SAMUEL HALL, the defendant, was involved in selling a total of five ghost guns to an undercover NYPD officer.  On two of those occasions, HALL personally sold firearms to an undercover officer; on the third occasion, HALL arranged the sale, but an individual HALL identified as his son completed the transfer.   HALL is not a licensed importer, manufacturer, or dealer of firearms.

## The Firearms Purchases

### *The January 2022 Meeting*

5.      Based on my review of New York City Police Department ("NYPD") reports and records, and discussions I have had with an undercover NYPD officer ("UC-1"), I know the following:

a.   In or about October 2021, a confidential source ("CS-1")[1] informed law enforcement officers that he knew someone who sold guns ("Individual-1").  At law enforcement's request, CS-1 arranged a meeting with Individual-1.

b.   On or about January 20, 2022, CS-1 and UC-1 met with Individual-1 (the "January 2022 Meeting").  The meeting occurred inside of CS-1's vehicle parked in the vicinity of the intersection of Jerome Avenue and Gun Hill Road in the Bronx, New York.

---

[1] Although CS-1 is no longer acting as a CS for NYPD, at the time CS-1 provided this information, CS-1 was receiving payment from the NYPD for information.

   c. During the meeting, CS-1 and UC-1 each purchased and obtained black 9MM Polymer 80 ghost guns from Individual-1.  In exchange for the firearms, CS-1 and UC-1 each paid Individual-1 $1,500 in cash.

   d. During the meeting, Individual-1 provided UC-1 with his phone number ("Phone Number-1") to use to arrange future gun buys.

   e. It was UC-1's understanding that Individual-1 went by the name "Sam."

   f. Both firearms purchased were subsequently determined to be operable by the NYPD Firearms Analysis Section.

### *The February 2022 Meeting*

   6. Based on my review of a series of text exchanges between UC-1 and Phone Number-1, I know the following:

   a. Following the January 2022 Meeting, UC-1 reached-out to Individual-1 on Phone Number-1 to arrange to purchase additional firearms.

   b. In a text exchange that occurred on or about February 2, 2022, Phone Number-1 messaged UC-1 that "I did not forget u I got u when I get back ny hot right now."

   c. On or about February 16, 2022, UC-1 received a message from Phone Number-1 stating: "Ok im ready."  UC-1 and Phone Number-1 then exchanged messages arranging to meet-up the next day.

   7. Based on my review of NYPD reports and records, and discussions I have had with UC-1, I know that on or about February 17, 2022, UC-1 again met with Individual-1 in the vicinity of the intersection of Jerome Avenue and Gun Hill Road in the Bronx, New York (the "February 2022 Meeting").  During the meeting, UC-1 purchased two black 9MM Polymer 80 ghost guns from Individual-1 in exchange for $2,800 in cash.  Both firearms were subsequently determined to be operable by the NYPD Firearms Analysis Section.

   8. Based on my review of an audio recording of the February 2022 Meeting, I know the following:

   a. During the meeting, UC-1 and Individual-1 discussed additional firearms and firearm-related equipment that Individual-1 could sell to UC-1.  Individual-1 stated that "these things" (referencing firearms) bought his house.

   b. Individual-1 made repeated references to travelling in and out of New York for firearms deals.  In particular, he stated that he resides in Dover, Delaware and rides on Amtrak to make the trips.  While on the train, he wears an Amtrak uniform to avoid scrutiny.  He explicitly stated that his Amtrack tickets are in his name.

*The March 2022 Meeting*

9.      Based on my review of a series of text exchanges between UC-1 and Phone Number-1, I know the following:

a.   On or about February 23, 2022, UC-1 exchanged a series of text messages with Phone Number-1 about purchasing additional firearms, including three "AR[s]" and a firearm with a "ladder."  Based on my training and experience and my participation in this investigation, I understand "AR" to refer to an AR-15-style semi-automatic rifle, and a "ladder" to refer an extended clip.

b.   Just after 1:00 p.m. on March 1, 2022, UC-1 texted Phone Number-1 that he was "[o]n [his] way."  Phone Number-1 responded: "Ok."

10.     Based on my review of NYPD reports and records, and discussions I have had with UC-1, I know that:

a.   On or about March 1, 2022, UC-1 and Individual-1 spoke on the phone and arranged to meet at approximately 1:00 p.m. in the same location as their previous firearms transactions.  Individual-1 informed UC-1 that he was sending his son to complete the gun sale.

b.   At the scheduled meet-up (the "March 2022 Meeting"), an individual ("Individual-2") whom UC-1 understood to be Individual-1's son, sold UC-1 a black .40 caliber Polymer 80 firearm with an extended magazine and a switch device to make the firearm fully automatic.  In exchange, UC-1 paid Individual-2 $2,000 in cash.  The firearm was subsequently determined to be operable by the NYPD Firearms Analysis Section.

**Identification of the Defendant**

11.     Based on my review of law enforcement records and conversations I have had with law enforcement officers, I know that on or about July 28, 2022, UC-1 identified SAMUEL HALL, the defendant, as Individual-1 in a photo array.

12.     Based on my review of Amtrak train records, I also know the following:

a.   On January 18, 2022, two days before the January 2022 Meeting, SAMUEL HALL, the defendant, travelled from Wilmington, Delaware to Penn Station in Manhattan on an Amtrak train.

b.   On February 16, 2022, one day before the February 2022 Meeting, HALL travelled from Wilmington, Delaware to Washington, D.C. and then on to Penn Station in Manhattan on an Amtrak train.

c.   On March 1, 2022, the same day as the March 2022 Meeting, HALL travelled from Wilmington, Delaware to Penn Station in Manhattan on an Amtrak train.

13.     Based on my review of GPS data obtained on Phone-Number-1, I know

the following:

      a.   GPS data shows that on February 16, 2022, the date SAMUEL HALL, the defendant, travelled from Wilmington, Delaware to Washington, D.C., and then on to Manhattan, the phone associated with Phone Number-1 similarly travelled from Wilmington, Delaware to Washington, D.C., and then on to Manhattan.

      b.   GPS data shows that on March 1, 2022, the date HALL travelled from Wilmington, Delaware to Manhattan, the phone associated with Phone Number-1 similarly travelled from Wilmington, Delaware to Manhattan.

      c.   GPS data shows that Phone Number-1 is frequently found in the vicinity of a particular address ("Address-1") in Delaware.

14.     Based on my review of property ownership records, I know that the registered owner of the house located at Address-1 is a particular individual ("Individual-3").

15.     Based on my discussions with other law enforcement agents, I know that the Kent County, Delaware Clerk of the Peace has confirmed that SAMUEL HALL, the defendant, married Individual-3 in July 2020.

16.     Based on the foregoing, I respectfully submit that there is probable cause to believe that Individual-1 is SAMUEL HALL, the defendant.

17.     Based on communications I have had with other law enforcement officers regarding checks they have conducted of law enforcement databases, I know that SAMUEL HALL, the defendant, is not a licensed importer, manufacturer, or dealer of firearms.

WHEREFORE, I respectfully request that SAMUEL HALL, the defendant, be arrested and imprisoned, or bailed, as the case may be.

/s/ sworn telephonically
_____
Valdrin Nikqi
Detective, NYPD

Sworn to before me by reliable electronic means
this _7_ th day of March, 2023

_Gabriel W. Gorenstein_

_____
HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK